James H. Power
Marie E. Larsen
Madelaine J. Harrington
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, New York 10019
Telephone: (212) 513-3200
Fascimile:  (212) 385-9010
Email: james.power@hklaw.com
       marie.larsen@hklaw.com
       madelaine.harrington@hklaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE APPLICATION OF
TATIANA AKHMEDOVA,

Applicant,

REQUEST FOR DISCOVERY PURSUANT
TO 28 U.S.C. § 1782.

Civil Action No. _____

## *EX PARTE* APPLICATION FOR AN ORDER ALLOWING DISCOVERY PURSUANT TO 28 U.S.C. §1782

Applicant Tatiana Akmedova ("Applicant"), by and through her undersigned counsel, Holland & Knight LLP, submits this *ex parte* application for an Order pursuant to 28 U.S.C. § 1782 to obtain discovery in the form of subpoenas to be served on banks and financial institutions located within the Southern District of New York, for the production of relevant documents in the possession, custody and/or control of American Express Bank Ltd New York, Bank of America, N.A., Bank of New York Mellon, BNP Paribas S.A., Barclay's Bank PLC, Citibank, N.A., Commerzbank AG, Credit Suisse Deutsche Bank AG, HSBC Bank (USA) N.A., J.P. Morgan Chase Bank, N.A., Societe Generale, Standard Chartered Bank, UBS AG and Wells

Fargo Bank N.A (hereinafter collectively referred to as "New York Banks") primarily for use in pending proceedings in the Republic of the Marshall Islands (Case No. 2018-169), as well as for potential use in other pending Foreign Proceedings.[1] Applicant respectfully seeks an expedited ruling on the Application as the High Court of the Republic of the Marshall Islands has issued an order authorizing discovery to be conducted prior to a February 13, 2019 briefing deadline. As such, to the extent possible Applicant hopes to receive an order from this Court by January 18, 2019.

Under 28 U.S.C. § 1782, an Applicant may be granted discovery in the United States in aid of a pending foreign proceeding if the Applicant is an interested party to the foreign proceeding and if the information sought is located within the district.

For the reasons set forth in this Application, the Declaration of James H. Power dated January 16, 2019, as well as the exhibits thereto, and the Memorandum of Law, submitted in support of this Application, this Application satisfies 28 U.S.C. § 1782's requirements and the Supreme Court's discretionary factors, and therefore the requested discovery should be granted.

## JURISDICTION, PARTIES & VENUE

Jurisdiction is proper pursuant to Title 28 United States Code Section 1782 as this Petition is for discovery involving the production of documents located within the Southern District of New York, discovery relevant and important to assist Applicant in her pending foreign court proceedings. At all times material herein, Applicant is and was a resident of England and is a British citizen.

Venue in the Southern District of New York is appropriate pursuant to Title 28 United States Code Section 1782 because the discovery is being sought from corporations, persons or entities within this judicial district, along with the documents being presently in this jurisdiction.

---

[1] Defined *infra*, p. 2.

## THE FOREIGN PROCEEDINGS

Applicant seeks discovery with respect to documents located in the United States and in this District for immediate and initial use the following pending litigations ("Foreign Proceedings"):

(i) The pending litigation against Qubo 2 Establishment ("Qubo 2") and Straight Establishment ("Straight") in the RMI Case No. 2018-169 seeking to recognize and enforce two English Judgments[2] pursuant to the Uniform Foreign Money-Judgments Recognition Act, codified in the RMI at 30 MIRC Chp. 4 § 401 *et seq.*, and to enforce the RMI judgment by obtaining the transfer of title and registration in the RMI for the luxury yacht named LUNA, (IMO No. 1010222) a vessel currently registered in the RMI with Certificate of Registry No. 5817-PY (the "Vessel" or "LUNA"). More specifically, discovery is sought in direct response to the RMI Court's January 3, 2019, Order For Supplemental Briefing (the "Supplemental Briefing Order"), which, *inter alia*, directed further discovery concerning whether there is a sufficient factual basis for the English Court in the underlying action to exercise personal jurisdiction over Straight Establishment and Qubo 2 as alter egos of defendant Farkhad and to hold them liable as judgment debtors in the English Proceedings. Discovery obtained here will be presented in the RMI to confirm that there is a sufficient factual basis concerning the English Court's alter ego holdings. Applicant has also sought relief in the RMI Action in the form of the appointment of a receiver pursuant to Marshall Islands Rule of Civil Procedure 66. The requested discovery will also be used to supplement the pending application to show that while Farkhad and Straight continue to retain possession of the

---

[2] Defined *infra*, ¶ 3.

3

LUNA, they have failed to spend the required sums to maintain her condition and seaworthiness. Evidence of a lack of payments for crew, maintenance, inspections, and other necessary services to the LUNA are relevant to the issue of whether a receiver should be appointed as well as whether Straight or any other party has violated the preliminary injunction issued by the RMI with respect to transferring, moving or otherwise interfering with the LUNA.

(ii) The pending litigation against the Vessel *in rem* and Straight Establishment, as owner, in the RMI pursuant to MIRCP Supplemental Admiralty Rule D for declaratory judgment as to the rightful owner of the Vessel and to obtain possession of the Vessel, wherever located.

(iii) The pending litigation in the United Kingdom (High Court of Justice, Family Division, Case No. FD13D05340), which is continuing as it now concerns violations by Farkhad Akhmedov ("Farkhad"), Cotor Investment, S.A. ("Cotor"), Qubo 1 Establishment ("Qubo 1"), Qubo 2, Straight, and Avenger Assets Corporation ("Avenger Assets") of the UK Freezing injunctions. The discovery obtained here will be used to prove such violations as well as to make additional motions to add judgment debtors on grounds of alter ego as more information is gathered to demonstrate that Farkhad Akhmedov has continued to use a web of companies and agents to transfer, hide, secret and otherwise violate numerous court orders including disclosure order and turnover order issued by the High Court of the United Kingdom.

(iv) The pending litigation in Dubai, UAE which involves the arrest of the vessel LUNA.

(v) The pending litigation in the Isle of Man which includes similar actions by Ms. Akhmedova to determine ownership over property, enforce freezing injunctions, restrain

assets and obtain turnover of property which has been removed or otherwise transferred by Farkhad Akhmedov in violation of various court orders.

(vi) The pending litigation in Liechtenstein filed on May 12, 2017, which involves a criminal proceeding as well as a Liechtenstein civil action in which Applicant has obtained a freezing order over Qubo 1 and Qubo 2 assets, and payment orders requiring them to transfer to Applicant the sums owed pursuant to the English Judgments.

## RELEVANT FACTS

The facts giving rise to this Application are set forth in detail in the Declaration of James H. Power dated January 16, 2019 (hereinafter "Power Declaration"), as well as the exhibits thereto. According to the declaration, the dispute and pending foreign litigations can be briefly summarized as follows:

The pending Foreign Proceedings arose in connection with Applicant's divorce from her former husband Farkhad Akhmedov. This divorce has been highly publicized as "Britain's Most Expensive Divorce" because it concerns hundreds of millions of dollars of assets, including one of the largest and most expensive yachts in the world – the LUNA (IMO No. 1010222).

### I.   The United Kingdom Proceedings

Following the divorce, an eight-day Financial Remedy Hearing was heard in the Family Division of the English High Court (the "English Court") in November and December 2016. The purpose of the Financial Remedy Hearing was to establish the value of the couple's assets and to decide how to divide that value in a final distribution. However, during the divorce proceeding and leading up to the Financial Remedy Hearing, Farkhad Akhmedov took significant steps to create a web of companies to transfer and receive hundreds of millions of dollars of estate property. Additionally, during the Financial Remedy Hearing, at the instruction

5

of Farkhad, the LUNA was transferred from its corporate owner, Avenger Assets, to another entity, Stern Management Corporation ("Stern Management"), and then again transferred at the instruction Stern Management Corporation to Qubo 2.

At the conclusion of the Financial Remedy Hearing on December 15, 2016, the English Court awarded Ms. Akhmedova the Cash Award of GBP £350,000,000 (approximately US $466.6 million). Farkhad was ordered by the English Court to pay the Cash Award by January 6, 2017. The "Initial Money Judgment" of £125,569,492 plus interest and certain running adjustments represents a portion Cash Award that does not constitute maintenance or support, and which is enforceable under the RMI Money Judgment Recognition Act.

In addition to the Initial Money Judgment, on December 20, 2016, the English Court: (1) set aside the transfer of a modern art collection and the assets of Cotor to entities in Lichtenstein, including Qubo 1 and Qubo 2, on the basis that Qubo 1 and Qubo 2 "are no more than ciphers and the alter ego of [Farkhad]" and (2) issued a Freezing Order preventing Farkhad and the other judgment debtors from dealing with his assets (whether in or outside England and Wales), and ordering him to make financial disclosure of his assets.

Farkad disregarded the English Court and on March 8, 2017, fraudulently transferred the Vessel to another Lichtenstein entity, Straight Establishment. On March 21, 2018, the English Court issued the Straight Money Judgment, which extended the Initial Money Judgment to include Straight Establishment and Avenger Assets and further found that Straight Establishment was an alter ego of Farkhad and served as his nominee. Additionally English Court: (1) declared that Applicant is the legal and beneficial order of the Vessel (2) ordered Farkhad and Straight Establishment to transfer title to Ms. Akhmedova within seven days, (3) ordered that if the title transfer was not effected within seven days, Straight Establishment would be liable to Ms.

Akhmedova for a liquidated cash sum of $487,278,000, and (4) extended the Freezing Order to apply to Straight Establishment and Avenger Assets, and specifically to prohibit the "removal, disposal, charging and/or diminution in value" of the Vessel.

## II.     The Dubai Proceedings

Following the issuance of the English Judgments as well as the Freezing Order directed at Farkhad with respect to the Vessel, on February 7, 2018 Applicant filed an application in the Dubai International Financial Centre Courts (hereinafter the "DIFC Court") against Farkhad and Straight Establishment (the owning entity of the Vessel), for recognition of the English Judgments, and for an interim freezing order to prevent Straight Establishment from disposing of or transferring ownership of the Vessel. At the time of the DIFC application, the Vessel was in Port Rashid, Dubai. On February 8, 2018 the Dubai Court issued an interim freezing injunction on an *ex parte* basis, and ordered that the injunction order be served on Farkhad by registered mail and email, and on Straight by registered mail and email via their registered agent in Liechtenstein. On the basis of the DIFC Freezing Injunction, the Dubai onshore court (the "Dubai Court") later granted an interim arrest of the Vessel pending determination as to the parties' claims in that Court.

The Vessel remains under arrest in Dubai, but Farkhad and Straight Establishment have filed various challenges to the Dubai action.

## III.    The Marshall Islands Proceeding

Applicant filed an action in the High Court of the RMI on July 10, 2018 (Case No. 2018-169) seeking recognition and enforcement of the two English Judgments entered in the English Court in favor of Applicant, and against the alter egos of Farkhad Akhmedov. Specifically, the registered owner of the Vessel, Straight Establishment is a foreign maritime entity registered in

7

the RMI, and the RMI Court has jurisdiction over the Vessel and the Maritime Administrator who maintains the RMI vessel registry, to re-register the Vessel in Applicant's name upon entry of judgment in her favor and at the time sought emergency relief in the form of an injunction against the further transfer of ownership, title or possession of the LUNA and sought the appointment of a receiver pending recognition.

Applicant also filed a parallel action in the High Court of the RMI on July 10, 2018 (Case No. 2018-168) pursuant to the RMI Supplemental Admiralty Rule D to adjudicate the rightful owner of the Vessel, to obtain declaratory judgment as to title of the LUNA, and to seek possession of the Vessel based on Applicant's rightful ownership. This action is currently stayed by the RMI Court pending resolution of the parallel action, Case No. 2018-169.

In connection with the Petition, Applicant requested the issuance of a temporary restraining order and preliminary injunction preventing the transfer of ownership of the Vessel by Straight Establishment during the pendency of the RMI action. On July 13, 2018, the RMI Court entered a temporary restraining order enjoining Straight Establishment from "disposing of, selling, transferring, encumbering, secreting or further exercising dominion or control over the Vessel to the exclusion and prejudice of Petitioner, wherever the Vessel is located."

On August 8, 2018, following substantial briefing between the parties, the court entered an order finding that grounds existed for the issuance of a preliminary injunction against Straight Establishment and its officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with them from "disposing of, selling, transferring, encumbering, removing, paying over, conveying or otherwise interfering with the vessel M/Y Luna… a vessel registered in the Marshall Islands, wherever located, during the pendency of this action" (the "Preliminary Injunction Order").

8

Applicant had also requested the appointment of a temporary receiver over the Vessel to ensure that the Vessel was not destroyed, devalued or otherwise diminished by Farkhad or Straight Establishment pending adjudication of the RMI and Dubai actions. On August 8, 2018, the RMI Court declined to appoint a temporary receiver based on his finding that at that time, an emergency did not yet exist, as there was no indication at that time that the Vessel would leave Dubai. The Court further stated that "[i]f, however, the Dubai arrest is vacated or other circumstances support the finding of an emergency, the Court will reconsider Ms. Akhmedova's request for a temporary receiver." On January 4, 2018, Applicant filed a renewed motion for the appointment of a receiver on the basis of emergency developments in Dubai, namely, that Straight Establishment was seeking vacatur of the arrest of the Vessel on an *ex parte* basis, without notice to Applicant or to the RMI Court, while contracting with a local tug to remove the Vessel from the jurisdiction prior to Applicant being able to file an appeal in Dubai, or to obtain emergency relief from the RMI Court. Applicant's renewed motion is still pending in the RMI.

On November 2, 2018, the RMI Court entered an order denying Straight Establishment and Qubo 2's motion to dismiss, holding that it has personal jurisdiction over Qubo 2 and Straight Establishment as foreign maritime entities registered in the Republic pursuant to 52 MIRC Part I § 125(2)(d) and consistent with due process.

On November 26, 2018 Applicant moved for summary judgment recognizing and enforcing the English money judgments against respondents Qubo 2 and Straight Establishment and for other relief. On January 3, 2019, in connection with Applicant's motion for summary judgment, the RMI Court issued the Supplemental Briefing Order which authorized discovery by Applicant on several issues, including whether there is a factual basis to support the English

Court's finding of alter-ego and exercise of personal jurisdiction over Qubo 2 and Straight, such that the English Judgments should be recognized in the RMI.

## IV. The Liechtenstein Proceeding

On May 12, 2017, a criminal proceeding was filed in Liechtenstein. The Liechtenstein proceeding, which is ongoing, can be summarized as follows. A criminal complaint was submitted to the Federal Prosecutor in Liechtenstein against Mr. Farkhad Akhmedova, Cotor and unknown offenders. Applicant alleges that Farkhad used Lichtenstein entities Qubo 1 and Qubo 2 to hide assets from the English courts. In light of the asset transfers which took place close to and in anticipation of the issuance of courts decisions in England, the complaint is based on the argument of "obstruction of legal execution" in accordance with Section 162 Liechtenstein Criminal Code.

Information obtained pursuant to this 1782 discovery would be submitted as appropriate to the Prosecutor who will consider whether such information about the timing, parties and substance of transactions warrants criminal prosecution under the laws of Liechtenstein. The discovery regarding any transfers prior to, during and after the Financial Remedy Hearing in England concerning the LUNA, including evidence of conveyances between Liechtenstein entities Qubo 2 and Straight after the freezing injunction was issued could be offered to support a criminal action. I am advised that the nature of the criminal action initiated in Lichtenstein allows Applicant to submit evidence obtained in support of violations alleged to have occurred by Farkhad Akmedov and others.

## V. The Discovery Targets

In this matter, discovery is sought in connection with Farkhad Akhmedov, and parties that are believed and/or known to be each an alter-ego, mere ciphers, successor-in-interest-or fraudulent conveyee of Farkhad Akhmedov, including, but not limited to:

(i) Farkhad Akhmedov;

(ii) Cotor Investment, S.A.;

(iii) Qubo 1 Establishment;

(iv) Qubo 2 Establishment;

(v) Straight Establishment; and

(vi) Avenger Assets Corporation

(viii) Woodblade Limited

(collectively, the "Alter Ego Entities").[3]

The several years of litigation in England have produced an extensive list of entities affiliated with Farkhad, including but not limited to entities that he is known to control, has an ownership interest in (direct or indirect), has employed to assist him in violating English court injunctions, freezing orders, disclosure and turnover orders and has instructed to facilitate the violation of the RMI injunction. These entities are known to make payments on Farkhad's behalf and/or hold his assets and some have been created solely for such purposes. In addition, some of these entities have or at one time owed money to Farkhad, or Farhkad owed money to

---

[3] It is expected that discovery will yield additional information supporting the English Court's determination that the Alter Ego Entities were alter egos and this discovery will demonstrate that yet-to-be-discovered entities are also alter-ego, mere ciphers, successor-in-interest or fraudulent conveyees of Farkhad Akhmedov exist and should be included as additional judgment debtors or the subject of supplemental relief in in the RMI, England and other foreign jurisdictions as appropriate.

them. As soon as Applicant obtains relief against a known alter ego, Farkhad and those being instructed by him and on his behalf create or utilize new entities to further Farkhad's intentional violations of these various court orders. The useful organogram contained in the April 19, 2018 press summary and Judgment from the English Court shows the relationship between the various entities subject to the order. Power Decl. Ex. 5 at 21. The entities that are necessarily involved in this targeted discovery and referred to as "Related Entities" are as follows;

    a) Tiffany Limited - (Isle of Man)

    b) Lucy Limited - (Isle of Man)

    c) Carolina Limited - (Isle of Man)

    d) Equiom (Isle of Man) Limited – Isle of Man

    e) Starspeed Limited

    f) WalPart Trust – Liechtenstein

    g) Counselor Trust – Liechtenstein

    h) Stern Management Corp – Panama

    i) Sunningdale Ltd – Cyprus

    j) Sedell Finance Ltd – BVI

    k) The Akhmedov 2013 Discretionary Trust - Bermuda

In addition to the aforementioned entities, additional known individuals and entities have been associated with the LUNA to such a degree and to require them to be the subject of this discovery. These entities are referred to as the "Associated Entities" and are listed as follows:

    a) Y.Co. S.A.M.

    b) Y.Co. Group Plc

    c) Y.Co. Group Limited

d) Russel Stockil

e) Yves Damette

f) Charles Birkett

g) WalPart Trust

h) Counselor Trust

i) Luna Crew IC Limited

j) Trident Trust Company (Guernsey) Limited

k) Mubarak Marine LLC

l) The Shipowner's Mutual P&I Association (Luxembourg)

m) Lloyds Register

### REQUEST FOR DISCOVERY ASSISTANCE

Applicant requests that the New York Banks, which are present in the Southern District of New York, be directed to provide discovery described below in support of the Foreign Proceedings.

As more specifically plead in Applicant's Memorandum of Law in Support of Petition for an Order Under 28 U.S.C. § 1782, assistance is appropriate here because: (i) Respondents "reside" at or are "found" in this district; (ii) Applicant is an "interested person" (as a party to the Foreign Proceedings); and (iii) the Foreign proceedings are pending, and the information obtained will be used in support of Applicant and introduced in the foreign proceedings.

WHEREFORE, pursuant to 28 U.S.C. §1782, Applicant requests that this Court enter an Order:

    A. Authorizing Applicant to conduct discovery pursuant to 28 U.S.C. § 1782 and the Federal Rules of Civil Procedure in the form of production of relevant banking

information concerning the Alter Ego Entities, the Related Entities, and the Associated Entities.

B. Directing the New York Banks and to comply with any discovery authorized by this Court's Order in accordance with the Federal Rules of Civil Procedure and the Rules of this Court;

C. Directing that notice of the discovery authorized by this Order need not be provided to any of the individuals named as a party in the foreign proceedings until such time as responsive documents are produced by the New York Banks and Applicant shall provide notice in any event prior to the foreign submission of any information obtained pursuant to this Order;

D. Appointing the undersigned counsel, to issue appropriate subpoenas to obtain the discovery authorized by this Court's Order;

E. Providing that this Court shall retain jurisdiction over this matter as is necessary to enforce the terms of any discovery authorized by this Court's Order;

F. Granting the Applicant such other and further relief as the Court deems just, equitable and proper.

Dated: New York, New York
       January 16, 2019

                              HOLLAND & KNIGHT LLP

                         By: _____
                              James H. Power
                              Marie E. Larsen
                              Madelaine J. Harrington
                              HOLLAND & KNIGHT LLP
                              31 West 52nd Street
                              New York, New York 10019

Telephone: (212) 513-3494
Facsimile: (212) 385-9010
Email: james.power@hklaw.com

*Attorneys for Tatiana Akhmedova*