UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE APPLICATION OF
TATIANA AKHMEDOVA,

                Applicant,

REQUEST FOR DISCOVERY PURSUANT
TO 28 U.S.C. § 1782.

Civil Action No. _____

## DECLARATION OF JAMES H. POWER IN SUPPORT OF
## APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782

JAMES H. POWER, hereby declares under penalty of perjury, pursuant to 28 U.S.C. § 1746 as follows:

1.    I am a member of the law firm Holland & Knight LLP, counsel for Applicant Tatiana Akhmedova ("Ms. Akhmedova" or "Applicant") in the above captioned action as well as in the pending litigation in the Republic of the Marshall Islands ("RMI") (Case Nos. 2018-168 and 2018-169 before the High Court of the Republic). This application for discovery is sought on an urgent and expedited basis primarily in response to the January 3, 2019 discovery order issued by the RMI High Court authorizing discovery concerning the issue of alter ego ("Supplemental Briefing Order"). The parties have initially been given until January 31, 2019 to complete discovery on certain factual questions concerning alter ego and other issues, and until February 13, 2019 to file supplemental briefs on the basis of discovery obtained. A true and correct copy of Supplemental Briefing Order is annexed hereto as **Exhibit 1**.

2.    I make this Declaration in support of the application of Ms. Akhmedova, to the U.S. District Court for the Southern District of New York under 28 U.S.C. § 1782 (the "1782

Application") seeking discovery with respect to documents located in the United States and in this judicial district in the possession, custody and/or control of American Express Bank Ltd New York, Bank of America, N.A., Bank of New York Mellon, BNP Paribas S.A., Barclay's Bank PLC, Citibank, N.A., Commerzbank AG, Credit Suisse Deutsche Bank AG, HSBC Bank (USA) N.A., J.P. Morgan Chase Bank, N.A., Societe Generale, Standard Chartered Bank, UBS AG and Wells Fargo Bank N.A (hereinafter collectively referred to as "New York Banks") for use in one or more pending foreign proceedings:

(i) The pending litigation against Qubo 2 Establishment ("Qubo 2") and Straight Establishment ("Straight") in the RMI Case No. 2018-169 seeking to recognize and enforce two English Judgments pursuant to the Uniform Foreign Money-Judgments Recognition Act, codified in the RMI at 30 MIRC Chp. 4 § 401 *et seq.*, and to enforce the RMI judgment by obtaining the transfer of title and registration in the RMI for the luxury yacht named LUNA, (IMO No. 1010222) a vessel currently registered in the RMI with Certificate of Registry No. 5817-PY (the "Vessel" or "LUNA"). More specifically, discovery is sought in direct response to the RMI Court's January 3, 2019, Supplemental Briefing Order, which, *inter alia*, directed further discovery concerning whether there is a sufficient factual basis for the English Court in the underlying action to exercise personal jurisdiction over Straight Establishment and Qubo 2 as alter egos of defendant Farkhad and to hold them liable as judgment debtors in the English Proceedings. Discovery obtained here will be presented in the RMI to confirm that there is a sufficient factual basis concerning the English Court's alter ego holdings. Applicant has also sought relief in the RMI Action in the form of the appointment of a receiver pursuant to Marshall Islands Rule of Civil Procedure 66. The requested discovery will also be used to supplement the pending

application to show that while Farkhad and Straight continue to retain possession of the LUNA, they have failed to spend the required sums to maintain her condition and seaworthiness. Evidence of a lack of payments for crew, maintenance, inspections, and other necessary services to the LUNA are relevant to the issue of whether a receiver should be appointed as well as whether Straight or any other party has violated the preliminary injunction issued by the RMI with respect to transferring, moving or otherwise interfering with the LUNA.

(ii) The pending litigation against the Vessel *in rem* and Straight Establishment, as owner, in the RMI pursuant to MIRCP Supplemental Admiralty Rule D for declaratory judgment as to the rightful owner of the Vessel and to obtain possession of the Vessel, wherever located.

(iii) The pending litigation in the United Kingdom (High Court of Justice, Family Division, Case No. FD13D05340), which is continuing as it now concerns violations by Farkhad Akhmedov ("Farkhad"), Cotor Investment, S.A. ("Cotor"), Qubo 1 Establishment ("Qubo 1"), Qubo 2, Straight, and Avenger Assets Corporation ("Avenger Assets") of the UK Freezing injunctions. The discovery obtained here will be used to prove such violation as well as to make additional motions to add judgment debtors on grounds of alter ego as more information is gathered to demonstrate that Farkhad Akhmedov has continued to use a web of companies and agents to transfer, hide, secret and otherwise violate numerous court orders including disclosure order and turnover order issued by the High Court of the United Kingdom.

(iv) The pending litigation in Dubai, UAE which involves the arrest of the vessel LUNA.

(v) The pending litigation in the Isle of Man which includes similar actions by Ms. Akhmedova to determine ownership over property, enforce freezing injunctions, restrain

assets and obtain turnover of property which has been removed or otherwise transferred by Farkhad Akhmedov in violation of various court orders.

(vi) The pending litigation in Liechtenstein filed on May 12, 2017, which involves a criminal proceeding as well as a Liechtenstein civil action in which Applicant has obtained a freezing order over Qubo 1 and Qubo 2 assets, and payment orders requiring them to transfer to Applicant the sums owed pursuant to the English Judgments.

3. I am fully authorized to make this Declaration by Ms. Akhmedova. I am fully familiar with the facts of this case, as well as the relevant facts of the foreign proceedings listed above that are pending. I am duly admitted and licensed to practice in the Republic of the Marshall Islands (Admission No. 193) and indeed I am counsel of record for Applicant in the pending RMI Action. Unless stated otherwise, the statements herein are based on my personal knowledge from my involvement in Ms. Akhmedova's case, as well as my review of relevant documents in connection with proceedings pending the RMI, United Kingdom, Isle of Man, Liechtenstein and Dubai.

## THE PARTIES AND BASIC FACTS

### I. The United Kingdom Proceedings

4. The divorce and related proceedings between Applicant and Farkhad have received global press coverage in part because it has been considered "Britain's Most Expensive Divorce" and a primary asset is one of the largest and most expensive yachts in the world – LUNA. The NY Times recently ran an article highlighting the cross-border fight for the LUNA. A true and correct copy of the NY Times article and other LUNA-related articles is annexed hereto as **Exhibit 2**.[1]

---

[1] Found at https://www.nytimes.com/2018/06/06/business/britain-divorce-farkhad-akhmedov.html

4

*A.     The Divorce and Initial Money Judgment*

5.     Applicant issued a divorce petition in London on October 24, 2013. Ms. Akhmedova was granted a *decree nisi*, stating that the English Court saw no reason why the couple could not divorce, on December 2, 2015. The *decree nisi* was made absolute on December 15, 2016.

6.     An eight-day Financial Remedy Hearing was heard in the Family Division of the English High Court in November and December 2016. The purpose of the Financial Remedy Hearing was to establish the value of the couple's assets and to decide how to divide that value in a final distribution. During this time frame of the divorce proceeding and leading up to the Financial Remedy Hearing, Farkhad Akhmedov took significant steps to create a web of companies to receive hundreds of millions of dollars of transfers of estate property.

7.     On November 30, 2016 (the second day of the Financial Remedy Hearing) the LUNA, a luxury yacht beneficially owned by Farkhad via corporate shell and registered in the Marshall Islands with Certificate of Registry No. 5817-PY, was transferred from its corporate owner, Avenger Assets, to another entity, Stern Management Corporation ("Stern Management") at the instruction of Farkhad. One day later, on December 1, 2016, the Vessel was again transferred at the instruction of Farkhad from Stern Management Corporation to Qubo 2. Attached as **Exhibit 3** are true and correct copies of RMI registration documents reflecting transfer of the Vessel, including a Special Power of Attorney in favor of three persons, principals and/or managers of Y. CO.,[2] the current manager of the Vessel, who has been managing the LUNA for several years and it has been involved in all aspects of issues relevant to this case.

---

[2] The Power of Attorney was executed in favor of Mr. Gary Wright, Mr. Yves Damette and Mr. Russell Stockil. According to Y. CO's website, Gary Wright is the co-founder and chairman of Y. CO., Yves Damette was at that time the Director of Yacht Management for Y.Co and its affiliates and Mr. Stockil is Director of Maritime Compliance for Y.Co. and group affiliated companies, Y.Co. S.A.M, Y.Co. Group Plc and Y.Co. Group Ltd.

5

8. At the conclusion of the Financial Remedy Hearing on December 15, 2016, the English Court awarded Ms. Akhmedova the Cash Award of GBP £350,000,000 (approximately US $466.6 million). Farkhad was ordered by the English Court to pay the Cash Award by January 6, 2017. The "Initial Money Judgment" of £125,569,492 plus interest and certain running adjustments represents a portion Cash Award that does not constitute maintenance or support, and which is enforceable under the RMI Money Judgment Recognition Act.

9. On December 20, 2016 the English Court also found that transfers of a 1) modern art collection worth tens of millions of dollars and 2) the assets of Cotor,[3] to entities in Liechtenstein, including Qubo 1 and Qubo 2 "was simply the latest part of [Farkhad's] attempts to avoid his liabilities by purporting to transfer his assets to a new jurisdiction and thereby making enforcement more difficult." The English Court set aside these transfers on the basis that Qubo 1 and Qubo 2 "are no more than ciphers and the alter ego of [Farkhad]" and made the Qubo entities liable for the judgment debt together with Farkhad.

10. On December 20, 2016 the English Court also issued a Freezing Order preventing Farkhad and the other judgment debtors from dealing with his assets (whether in or outside England and Wales), and ordering him to make financial disclosure of his assets.

11. Farkhad has not voluntarily satisfied any portion of the Cash Award, including the Initial Money Judgment, and is currently in contempt of Court for breaching the terms of the Freezing Order. He has instead continued to engage in a pattern of deception aimed at concealing his assets and frustrating Ms. Akhmedova in her efforts to enforce her rights as a UK judgment creditor.

---

[3] In 2012, Farkhad sold his interest in ZAO Northgas, a Russian oil company, for US $1.375 billion. Following the sale, Farkhad the English Court found that he then transferred the bulk of the sale proceeds to Cotor.

12. On March 8, 2017 (while the Vessel and Farkhad were located within the United States, specifically, Florida), in disregard of the Initial Money Judgment (under which Qubo 2 was liable on the judgment debt together with Farkhad), and the English Freezing Order, Qubo 2 fraudulently transferred the Vessel to Straight Establishment. Attached as **Exhibit 4** are true and correct copies of RMI registration documents reflecting the transfer to Straight Establishment. Straight Establishment is a Liechtenstein entity, which is operated from the same address as Qubo 2. Straight Establishment is the current registered owner of the LUNA,[4] and has registered as a foreign maritime entity as required under RMI law.

13. According to documents obtained from the RMI Registrar of Corporations, the fraudulent transfer of the Vessel's title to Straight Establishment in violation of the Freezing Order was effected on behalf of Farkhad by key officers and directors at Y. CO., the Vessel's current manager. *See* Ex. 4.

### B.     *The Straight Money Judgment*

14. On March 21, 2018, the English Court issued the Straight Money Judgment, which extended the Initial Money Judgment to include Straight Establishment and Avenger Assets. The English Court found that Straight Establishment was an alter ego of Farkhad and served as his nominee. The English Court found that assets held and previously held in Straight Establishment's name, as well as assets held and previously held in Avenger Asset's name, beneficially belonged to Farkhad, including the Vessel which had been fraudulently transferred by Farkhad several times during the English proceedings.

---

[4] As of August 8, 2018 Straight Establishment and its agents have been permanently enjoined from further transferring ownership, control or possession of the LUNA by the High Court of the Marshall Islands though Farkhad has established that he has violated such injunction by arranging to illegally tow the LUNA from Dubai thereby further frustrating Applicant's efforts to gain possession and control over the LUNA which was awarded to her by the English court. Straight is similarly enjoined from encumbering the Vessel with any liens.

15. Additionally, on March 21, 2018, the English Court declared "with immediate effect that Applicant is the legal and beneficial owner of the Vessel," and ordered Farkhad and Straight Establishment to transfer title to Ms. Akhmedova within seven days. The English Court ordered that if the title transfer was not effected within seven days, Straight Establishment would be liable to Ms. Akhmedova for a liquidated cash sum of $487,278,000. *See* Ex. 5 at ¶ 82(2). The English Court also extended the Freezing Order to apply to Straight Establishment and Avenger Assets, and specifically applied to prohibit the "removal, disposal, charging and/or diminution in value" of the Vessel. *See id.* at ¶ 86.

16. On April 19, 2018 the English Court issued a press release followed by a Judgment issued on the same date, both annexed as **Exhibit 5** hereto. The April 19 opinion and order issued by Justice Haddon-Cave referred to as the "Approved Judgement," in addition to granting further relief to Applicant as a result of Straight's failure to transfer title to Ms. Akhmedova as ordered, recites the basis for the Court's March 21, 2018 Straight Money Judgment. *See* Ex. 5. Justice Haddon-Cave sets forth in detail his reasoning for finding Straight and Avenger to be alter egos of Farkhad including his assessment of the evidence presented and includes a detailed organogram showing Farkhad's known affiliates and the transfers of estate property made between them. Ex. 5 at 21.

## II. The Dubai Proceedings

17. Following the issuance of the English Judgments as well as the Freezing Order directed at Farkhad with respect to the Vessel, on February 7, 2018 Applicant filed an application in the Dubai International Financial Centre Courts (hereinafter the "DIFC Court") against Farkhad and Straight Establishment (the owning entity of the Vessel), for recognition of the English Judgments, and for an interim freezing order to prevent Straight Establishment from disposing of

8

or transferring ownership of the Vessel. At the time of the DIFC application, the Vessel was in Port Rashid, Dubai. On February 8, 2018 the Dubai Court issued an interim freezing injunction on an *ex parte* basis, and ordered that the injunction order be served on Farkhad by registered mail and email, and on Straight by registered mail and email via their registered agent in Liechtenstein. On the basis of the DIFC Freezing Injunction, the Dubai onshore court (the "Dubai Court") later granted an interim arrest of the Vessel pending determination as to the parties' claims in that Court.

18. The Vessel remains under arrest in Dubai, but Farkhad and Straight Establishment have filed various challenges to the Dubai action.

### III.     The Marshall Islands Proceeding

19. Applicant filed an action in the High Court of the RMI on July 10, 2018 (Case No. 2018-169) seeking recognition and enforcement of the two English Judgments entered in the English Court in favor of Applicant, and against the alter egos of Farkhad Akhmedov. Specifically, the registered owner of the Vessel, Straight Establishment is a foreign maritime entity registered in the RMI, and the RMI Court has jurisdiction over the Maritime Administrator who maintains the RMI vessel registry, to re-register the Vessel in Applicant's name upon entry of judgment in her favor and at the time sought emergency relief in the form of an injunction against the further transfer of ownership, title or possession of the LUNA and sought the appointment of a receiver pending recognition.

20. Applicant also filed a parallel action in the High Court of the RMI on July 10, 2018 (Case No. 2018-168) pursuant to the RMI Supplemental Admiralty Rule D to adjudicate the rightful owner of the Vessel, to obtain declaratory judgment as to title of the LUNA, and to seek possession of the Vessel based on Applicant's rightful ownership. This action is currently stayed by the RMI Court pending resolution of the parallel action, Case No. 2018-169.

9

21. In connection with the Petition, Applicant requested the issuance of a temporary restraining order and preliminary injunction preventing the transfer of ownership of the Vessel by Straight Establishment during the pendency of the RMI action. On July 13, 2018, the RMI Court entered a temporary restraining order enjoining Straight Establishment from "disposing of, selling, transferring, encumbering, secreting or further exercising dominion or control over the Vessel to the exclusion and prejudice of Petitioner, wherever the Vessel is located."

22. On August 8, 2018, following substantial briefing between the parties, the court entered an order finding that grounds existed for the issuance of a preliminary injunction against Straight Establishment and its officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with them from "disposing of, selling, transferring, encumbering, removing, paying over, conveying or otherwise interfering with the vessel M/Y Luna… a vessel registered in the Marshall Islands, wherever located, during the pendency of this action" (the "Preliminary Injunction Order").

23. Applicant had also requested the appointment of a temporary receiver over the Vessel to ensure that the Vessel was not destroyed, devalued or otherwise diminished by Farkhad or Straight Establishment pending adjudication of the RMI and Dubai actions. On August 8, 2018, the RMI Court declined to appoint a temporary receiver based on his finding that at that time, an emergency did not yet exist, as there was no indication at that time that the Vessel would leave Dubai. The Court further stated that "[i]f, however, the Dubai arrest is vacated or other circumstances support the finding of an emergency, the Court will reconsider Ms. Akhmedova's request for a temporary receiver." On January 4, 2018, Applicant filed a renewed motion for the appointment of a receiver on the basis of emergency developments in Dubai, namely, that Straight Establishment was seeking vacatur of the arrest of the Vessel on an *ex parte* basis, without notice

to Applicant or to the RMI Court, while contracting with a local tug to remove the Vessel from the jurisdiction prior to Applicant being able to file an appeal in Dubai, or to obtain emergency relief from the RMI Court. Applicant's renewed motion is still pending in the RMI.

24. On November 2, 2018, the RMI Court entered an order denying Straight Establishment and Qubo 2's motion to dismiss, holding that it has personal jurisdiction over Qubo 2 and Straight Establishment as foreign maritime entities registered in the Republic pursuant to 52 MIRC Part I § 125(2)(d) and consistent with due process.

25. On November 26, 2018 Applicant moved for summary judgment recognizing and enforcing the English money judgments against respondents Qubo 2 and Straight Establishment. On January 3, 2019, in connection with Applicant's motion for summary judgment, the RMI Court issued the Supplemental Briefing Order which authorized discovery by Applicant on several issues, including whether there is a factual basis to support the English Court's finding of alter-ego and exercise of personal jurisdiction over Qubo 2 and Straight, such that the English Judgments should be recognized in the RMI.

IV. **The Liechtenstein Proceeding**

26. On May 12, 2017, a criminal proceeding was filed in Liechtenstein. The Liechtenstein proceeding, which is ongoing, can be summarized as follows. A criminal complaint was submitted to the Federal Prosecutor in Liechtenstein against Mr. Farkhad Akhmedova, Cotor and unknown offenders. Applicant alleges that Farkhad used Lichtenstein entities Qubo 1 and Qubo 2 to hide assets from the English courts. In light of the asset transfers which took place close to and in anticipation of the issuance of courts decisions in England, the complaint is based on the argument of "obstruction of legal execution" in accordance with Section 162 Liechtenstein Criminal Code. Information obtained pursuant to this 1782 discovery would be submitted as

appropriate to the Prosecutor who will consider whether such information about the timing, parties and substance of transactions warrants criminal prosecution under the laws of Liechtenstein. The discovery regarding any transfers prior to, during and after the Financial Remedy Hearing in England concerning the LUNA, including evidence of conveyances between Liechtenstein entities Qubo 2 and Straight after the freezing injunction was issued could be offered to support a criminal action. I am advised that the nature of the criminal action initiated in Lichtenstein allows Applicant to submit evidence obtained in support of violations alleged to have occurred by Farkhad Akmedov and others.

## APPLICANT'S REQUEST FOR DISCOVERY PURSUANT TO 28 USC 1782

27. In this matter, discovery is sought in connection with Farkhad Akhmedov, a judgment debtor of Applicant, and parties that are believed and/or known to be each an alter-ego, mere cipher, successor-in-interest or fraudulent conveyee of Farkhad Akhmedov, including, but not limited to:

(i) Farkhad Akhmedov;

(ii) Cotor Investment, S.A.;

(iii) Qubo 1 Establishment;

(iv) Qubo 2 Establishment;

(v) Straight Establishment; and

(vi) Avenger Assets Corporation

(viii) Woodblade Limited

12

(collectively, the "Alter Ego Entities").[5]

28. The several years of litigation in England have produced an extensive list of entities affiliated with Farkhad, including but not limited to entities that he is known to control, has an ownership interest in (direct or indirect), has employed to assist him in violating English court injunctions, freezing orders, disclosure and turnover orders and has instructed to facilitate the violation of the RMI injunction. These entities are known to make payments on Farkhad's behalf and/or hold his assets and have been created solely for such purposes. In addition, some of these entities have or at one time owed money to Farkhad, or Farhkad owed money to them. As soon as Applicant obtains relief against a known alter ego, Farkhad and those being instructed by him and on his behalf create or utilize new entities to further Farkhad's intentional violations of these various court orders. The useful organogram contained in the April 19, 2018 press summary and Judgment from the English Court shows the relationship between the various entities subject to the order. *See* Ex. 5. The entities that are necessarily involved in this targeted discovery and referred to as "Related Entities" are as follows;

    a) Tiffany Limited - (Isle of Man)

    b) Lucy Limited - (Isle of Man)

    c) Carolina Limited - (Isle of Man)

    d) Equiom (Isle of Man) Limited – Isle of Man

    e) Starspeed Limited

    f) WalPart Trust – Liechtenstein

---

[5] It is expected that discovery will yield additional information supporting the English Court's determination that the Alter Ego Entities are in fact alter egos. Additionally, this discovery will demonstrate that yet-to-be-discovered entities exist and are also alter egos, mere ciphers, successor-in-interest or fraudulent conveyees of Farkhad Akhmedov and should be included as additional judgment debtors or the subject of supplemental relief in in the RMI, England and other foreign jurisdictions as appropriate.

g) Counselor Trust – Liechtenstein

h) Stern Management Corp – Panama

i) Sunningdale Ltd – Cyprus

j) Sedell Finance Ltd – BVI

k) The Akhmedov 2013 Discretionary Trust - Bermuda

29. In addition to the aforementioned entities, additional known individuals and entities have been associated with the LUNA to such a degree and to require them to be the subject of this discovery. These entities include:

a) Y.Co. S.A.M.

b) Y.Co. Group Plc

c) Y.Co. Group Limited

d) Russel Stockil

e) Yves Damette

f) Charles Birkett

g) WalPart Trust

h) Counselor Trust

i) Luna Crew IC Limited

j) Trident Trust Company (Guernsey) Limited

k) Mubarak Marine LLC

l) The Shipowner's Mutual P&I Association (Luxembourg)

m) Lloyds Register

30. The aforementioned individuals and entities have confirmed relationships with the LUNA and transaction involving these entities referencing the LUNA (IMO No. 1010222) during

the period from January 1, 2015 to present are relevant and material and are sought as part of this application.

31. The current manager of the Vessel, the Yacht Company ("Y. CO."), has been managing the LUNA for several years and it has been involved in all aspects of issues relevant to this case. A true and correct copy of an invoice from Y.CO. to Avenger is annexed hereto as **Exhibit 6**, which serves and an exemplar of the types of transactions sought relating to Y.CO. and the Luna's "corporate" owners over the past years, which include Avenger, Stern, Qubo 2 and Straight.

32. A sampling of information gathered from open sources and produced in response to subpoenas served on third parties in Florida and Texas is annexed hereto as **Exhibit 7** (Bates Nos YCO 0004-0009). As of January 1, 2017, as confirmed by Y.CO. Bates No. 0004, Farkhad's son Temur has become involved in assisting Farkhad with the LUNA and Y.CO. Bates No. 0007 confirms that the principle [Farkhad] and his new family were onboard during February and March 2017 while the Vessel was in the United States and that Farkhad was in full control of the Vessel including the timing of any inspections.

33. One of the companies used by Farkhad to pay the crew is Luna Crew IC Limited. An exemplar of an invoice is annexed hereto as **Exhibit 8**. LUNA IC Crew Limited is run by Trident Trust.

34. Mubarac Marine is the company that would have arranged, at the request of Farkhad or his agent, to tow the LUNA from Dubai using the tug Duma in violation of the RMI injunction. The LUNA is insured by Shipowner's Mutual P&I Association (Luxembourg) who would have likely issued an invoice in U.S. Dollars for the tow insurance and a record of such

payment by the agent of the Vessel is relevant. Annexed as **Exhibit 9** are supports for this information.

35. To the best of my knowledge and belief, and based on my experience in obtaining bank account, loan, investment and U.S. dollar wire transfer records, each of the New York Banks from which discovery is sought – American Express Bank Ltd New York, Bank of America, N.A., Bank of New York Mellon, BNP Paribas S.A., Barclay's Bank PLC, Citibank, N.A., Commerzbank AG, Credit Suisse Deutsche Bank AG, HSBC Bank (USA) N.A., J.P. Morgan Chase Bank, N.A., Societe Generale, Standard Chartered Bank, UBS AG and Wells Fargo Bank N.A – is a participant in the Clearing House Interbank Payment System (CHIPS), which, according to the Clearing House Payments Company LLC's website is the largest private-sector U.S. dollar funds transfer system in the world.[6]

36. In my experience, the New York Banks keep electronic records of U.S. dollar fund transfers and transfers made or converted into other currencies where the foreign customers of the New York Banks maintain such other currency accounts and are able to easily search and produce these records. These records are not of the accounts of defendants themselves but independent third party records that often confirm or contradict information provided by the parties to the foreign litigations.

37. Applicant, as a result of information generated as part of the Financial Remedy Hearing in England, has some information identifying banks and accounts previously used by Farkhad and his known alter egos and due to the intentional violation of the English disclosures

---

[6] *See* The Clearing House, https://www.theclearinghouse.org/~/link.aspx?_id=8AD2931B0ED0468DB096332DA183241B&_z=z (last visited Jan. 10, 2019) (generally describing the CHIPS system), The Clearing House, https://www.theclearinghouse.org/-/media/new/tch/documents/payment-systems/chips_participants_revised_05-29-2018.pdf (last visited Jan. 10, 2019) (providing a list of participants, including the New York Banks.

16

orders non-disclosure and the Freezing Injunction, Farkhad has, for the time being, employed additional agents and companies to further transfer and hide marital assets. The companies Farkhad created and controls and jurisdictions that Farkhad are connected with foreign banks and financial companies that have relationships with certain correspondent banks. Because Farkhad uses paying agents and cipher companies to transfer funds Applicant does not know all the foreign banks in the world that Farkhad and his Related Parties do business, however the New York Banks that were selected are known to do business with Dubai, Liechtenstein, and the United Kingdom, and more specifically act as correspondent banks for foreign banks located in these jurisdictions including those specifically known to Applicant. The wire-transfer records should identify U.S. dollar wire-transfers where the Alter Egos and Related Entities and other known affiliated companies are listed as originator or beneficiaries, or otherwise referenced in the transaction.

38. As a result of the investigations performed by Applicant and based on evidence submitted to the English High Court during the Financial Remedy Hearing a freezing order was issued in the High Court of Justice, Family Division, a copy of which is attached hereto as **Exhibit 10**. The Freezing Order identifies at pages 4-7 the alter egos and related entities and collective property that was deemed to be part of the marital estate including numerous bank accounts and sub-accounts in several jurisdictions held with UBS and its many affiliates, ALFA Bank, International Bank of Azerbaijan, LGT Bank (and affiliates), investment accounts, share holdings, numerous works of art including those by Warhol, Rothko, Klein and others, a plane, a helicopter, an Aston Martin Virage Vantage Coupe automobile and numerous Holland & Holland shotguns. For the most part, Applicant has through the years and via the English Courts identified the accounts and assets forming the marital estate a portion of which was awarded to her. The discovery sought herein is not for the sole or even primary purpose of identifying assets as part of

a pre-judgment attachment remedy. Rather, the requested discovery is primarily intended to show the alter ego relationships between the known entities, show that equitable veil piercing in England and the RMI is appropriate based on the factual evidence, and that various entities controlled by Farkhad continue to violate court orders and injunctions and act as mere ciphers to hide the assets belonging to Farkhad.

39. ALFA Bank, International Bank of Azerbaijan, LGT Bank have direct relationships with NY located intermediary banks. These relationships are with NY-located intermediaries including, but not limited to, Citibank N.A., Standard Chartered Bank, The Bank of New York Mellon, Deutsche Bank Trust Co Americas and JPMorgan Chase Bank N.A. In addition, LGT Bank has its affiliate company, LGT Capital Partners (USA) Inc., located in New York.

40. Accordingly, these wire-transfer records will generate a more definitive picture of the use of Farkhad's foreign bank accounts and assets and to link Farkhad, the judgment debtor, to his trading partners and counterparties that are doing business internationally and to determine whether assets are being co-mingled among the Alter Egos and other companies in violation of several freezing orders and the RMI injunction. In turn, such information will inform Applicant whether the Related Parties are exhibiting sufficient fund transfer activity to be considered alter-egos, successors-in-interest, mere ciphers, or fraudulent conveyees at which point Applicant would seek to have them added as judgments debtors in England and in the other pending foreign proceedings.

41. The above-mentioned foreign proceedings are and will be adjudicative in nature because by their very nature they require the foreign court to determine whether one or more of the Related Parties is an alter ego of Farkhad Akhmedov (a finding that will only be made based on the parties' supplemental briefs that were ordered by the RMI Court), whether such identified

transfers violated the English Freezing order, or whether the transfers identify additional entities that should be added as judgment debtors in the English Proceeding via additional motion practice and evidentiary hearings.

42. As such, Applicant respectfully requests the Court grant her request for discovery pursuant to 28 U.S.C. § 1782 to obtain information concerning the Alter Egos' and Related Parties' financial transactions.

43. Obtaining this information will require: a subpoena requiring production of financial records and wire processing records maintained by the New York Banks which reference the Alter Egos and Related Parties, all of which documents are believed to be located in the United States and accessible from offices located within this District.

44. An expedited ruling from this Court on this Petition is sought. The reason for the request for an expedited ruling is to enable Applicant to comply with the deadlines set forth in the recent Supplemental Briefing Order entered by the High Court of the Marshall Islands on January 3, 2019, and authorizing discovery by Applicant on alter ego issues by January 31, 2019, and ordering submission of supplemental briefing by February 13, 2019. *See* Ex. 1.

45. Applicant therefore seeks an order requiring the New York Banks to respond to subpoenas within fourteen (14) days of service. As such, Applicant respectfully requests a ruling by this Court on this Application on or before January 18, 2019.

46. In addition to the request for an expedited ruling Applicant requests that it be given additional time to provide notice to the Alter Egos of this application and any *ex parte* order until after the subpoena is served and the documents are produced by the third parties. Applicant will provide the Alter Egos and their foreign counsel in the RMI a copy of the order and all discovery prior to submitting any such information to the RMI Court. A similar request to briefly stay notice

under Rule 45 was granted in a related 1782 action brought by Petition in the U.S. District Court for the Southern District of Texas. Attached as **Exhibit 11** is a copy of the U.S. District Court for the Southern District of Texas order allowing delayed notice to counsel for the defendants in the RMI action. Notice of the subpoena and copies of the records received were provided to RMI counsel for Straight and Qubo 2. Applicant seeks an order to allow the same process to occur here.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:   New York, New York
         January 16, 2019

_____
James H. Power