James H. Power
Marie E. Larsen
Madelaine J. Harrington
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, New York 10019
Telephone: (212) 513-3200
Fascimile:  (212) 385-9010
Email: james.power@hklaw.com
         marie.larsen@hklaw.com
         madelaine.harrington@hklaw.com

*Attorneys for Applicant*
*Tatiana Akhemedova*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE APPLICATION OF
TATIANA AKHMEDOVA,

                    Applicant,

REQUEST FOR DISCOVERY PURSUANT
TO 28 U.S.C. § 1782.

Civil Action No. _____

**MEMORANDUM OF LAW IN SUPPORT OF**
**TATIANA AKHMEDOVA'S *EX PARTE* APPLICATION FOR AN**
**ORDER GRANTING DISCOVERY PURSUANT TO 28 U.S.C. § 1782**[1]

      Applicant, Tatiana Akhmedova, a resident of England and British citizen ("**Ms.**

**Akhmedova**" or "**Applicant**"), by and through her undersigned counsel, Holland & Knight LLP,

and for her memorandum of law in support of an application for discovery pursuant to 28 U.S.C.

---

[1] Applicant seeks an *ex parte* ruling with delayed notice to the adverse parties in the foreign litigations, but does not request that the Memorandum of Law or related filings be filed under seal.

§ 1782 (the "**1782 Application**") from Bank of America, N.A., Bank of New York Mellon, BNP Paribas S.A., Barclay's Bank PLC, Citibank, N.A., Commerzbank AG, Deutsche Bank AG, HSBC Bank (USA) N.A., J.P. Morgan Chase Bank, N.A., Societe Generale, Standard Chartered Bank, UBS AG and Wells Fargo Bank N.A. (hereinafter collectively referred to as "**New York Banks**") states as follows:

## PRELIMINARY STATEMENT

This Memorandum is offered in support of Ms. Akhmedova's 1782 Application seeking discovery with respect to documents located in the United States and in this Judicial District for use in the following foreign proceedings (collectively, the "Foreign Actions")

(i) The pending litigation against Qubo 2 Establishment ("Qubo 2") and Straight Establishment ("Straight") in the RMI Case No. 2018-169 seeking to recognize and enforce two English Judgments pursuant to the Uniform Foreign Money-Judgments Recognition Act, codified in the RMI at 30 MIRC Chp. 4 § 401 *et seq.,* and to enforce the RMI judgment by obtaining the transfer of title and registration in the RMI for the luxury yacht named LUNA, (IMO No. 1010222) a vessel currently registered in the RMI with Certificate of Registry No. 5817-PY (the "Vessel" or "LUNA"). More specifically, discovery is sought in direct response to the RMI Court's January 3, 2019, Supplemental Briefing Order, which, *inter alia*, directed further discovery concerning whether there is a sufficient factual basis for the English Court in the underlying action to exercise personal jurisdiction over Straight Establishment and Qubo 2 as alter egos of defendant Farkhad and to hold them liable as judgment debtors in the English Proceedings. Discovery obtained here in support of alter ego will be presented in the RMI to confirm that there is a sufficient factual basis concerning the English Court's alter ego holdings. Applicant has also sought relief in the RMI Action in the form of the appointment of a receiver pursuant to Marshall Islands Rule

of Civil Procedure 66. The requested discovery will also be used to supplement the pending application to show that while Farkhad and Straight continue to retain possession of the LUNA, they have failed to spend the required sums to maintain her condition and seaworthiness. Evidence of a lack of payments for crew, maintenance, inspections, and other necessary services to the LUNA are relevant to the issue of whether a receiver should be appointed as well as whether Straight or any other party has violated the preliminary injunction issued by the RMI with respect to transferring, moving or otherwise interfering with the LUNA.

(ii) The pending litigation against the Vessel *in rem* and Straight Establishment, as owner, in the RMI pursuant to MIRCP Supplemental Admiralty Rule D for declaratory judgment as to the rightful owner of the Vessel and to obtain possession of the Vessel, wherever located.

(iii) The pending litigation in the United Kingdom (High Court of Justice, Family Division, Case No. FD13D05340), which is continuing as it now concerns violations by Farkhad Akhmedov ("Farkhad"), Cotor Investment, S.A. ("Cotor"), Qubo 1 Establishment ("Qubo 1"), Qubo 2, Straight, and Avenger Assets Corporation ("Avenger Assets") of the UK Freezing injunctions. The discovery obtained here will be used to prove such violation as well as to make additional motions to add judgment debtors on grounds of alter ego as more information is gathered to demonstrate that Farkhad Akhmedov has continued to use a web of companies and agents to transfer, hide, secret and otherwise violate numerous court orders including disclosure order and turnover order issued by the High Court of the United Kingdom.

(iv) The pending litigation in Dubai, UAE which involves the arrest of the vessel LUNA.

(v) The pending litigation in the Isle of Man which includes similar actions by Ms. Akhmedova to determine ownership over property, enforce freezing injunctions, restrain assets and obtain turnover of property which has been removed or otherwise transferred by Farkhad Akhmedov in violation of various court orders.

(vi) The pending litigation in Liechtenstein filed on May 12, 2017, which involves a criminal proceeding as well as a Liechtenstein civil action in which Applicant has obtained a freezing order over Qubo 1 and Qubo 2 assets, and payment orders requiring them to transfer to Applicant the sums owed pursuant to the English Judgments

## JURISDICTION AND VENUE

Jurisdiction is proper pursuant to Title 28 United States Code Section 1782 as this Application is for discovery involving documents located within the Southern District of New York, necessary to assist Applicant in the RMI Litigations.  At all times material herein, Applicant is and was a resident of England and British citizen.  Venue in the Southern District of New York is appropriate pursuant to Title 28 United States Code Section 1782 because the discovery is being sought from the New York Banks, who are present within this Judicial District, along with the documents presently located in this jurisdiction in the New York Banks' possession or control.

## FACTUAL BACKGROUND

The facts giving rise to this Application are set forth in detail in the Declaration of James H. Power dated January 16, 2019 ("hereinafter "Power Declaration"), as well as the exhibits attached thereto.  According to the declaration, the dispute and pending foreign litigations can be summarized as follows:

4

## I.   The United Kingdom Proceedings

The divorce and related proceedings between Applicant and Farkhad have received global press coverage in part because it has been considered "Britain's Most Expensive Divorce" and a primary asset is one of the largest and most expensive yachts in the world – LUNA.  The NY Times recently ran an article highlighting the cross-border fight for the LUNA.  *See* Power Decl., Ex. 2.

### A.   *The Divorce and Initial Money Judgment*

On December 15, 2016 the *decree nisi* authorizing Ms. Akhmedova's divorce from her former husband was made absolute.  There followed an eight-day Financial Remedy Hearing in the English Court to establish the value of the couple's assets and to decide how to divide that value in a final distribution.  However, during in the time frame of the divorce proceeding and leading up to the Financial Remedy Hearing, Farkhad Akhmedov took significant steps to create a web of companies to transfer and receive hundreds of millions of dollars of estate property to both remove assets from the English Court's jurisdiction and in an attempt to lower the value of the estate which was to be apportioned between Applicant and Farkhad according to English law.

On November 30, 2016 (the second day of the Financial Remedy Hearing) the LUNA, a luxury yacht beneficially owned by Farkhad via corporate shell and registered in the Marshall Islands with Certificate of Registry No. 5817-PY, was transferred from its corporate owner, Avenger Assets, to another entity, Stern Management Corporation ("Stern Management") at the instruction of Farkhad.  One day later, on December 1, 2016, the Vessel was again transferred at the instruction of Farkhad from Stern Management Corporation to Qubo 2.  Power Decl., Ex. 3.

At the conclusion of the Financial Remedy Hearing on December 15, 2016, the English Court awarded Ms. Akhmedova the Cash Award of GBP £350,000,000 (approximately US $466.6

million).  Farkhad was ordered by the English Court to pay the Cash Award by January 6, 2017. The "Initial Money Judgment" of £125,569,492 plus interest and certain running adjustments represents a portion Cash Award that does not constitute maintenance or support, and which is enforceable under the RMI Money Judgment Recognition Act.

On December 20, 2016 the English Court also found that transfers of a 1) modern art collection worth tens of millions of dollars and 2) the assets of Cotor, to entities in Liechtenstein, including Qubo 1 and Qubo 2 "was simply the latest part of [Farkhad's] attempts to avoid his liabilities by purporting to transfer his assets to a new jurisdiction and thereby making enforcement more difficult."  Power Decl. ¶ 9.  The English Court set aside these transfers on the basis that Qubo 1 and Qubo 2 "are no more than ciphers and the alter ego of [Farkhad]" and made the Qubo entities liable for the judgment debt together with Farkhad.  *Id.*  Additionally, on the same date, the English Court issued a Freezing Order preventing Farkhad and the other judgment debtors from dealing with his assets (whether in or outside England and Wales), and ordering him to make financial disclosure of his assets.

Farkhad has not voluntarily satisfied any portion of the Cash Award, including the Initial Money Judgment, and is currently in contempt of Court for breaching the terms of the Freezing Order.  He has instead continued to engage in a pattern of deception aimed at concealing his assets and frustrating Ms. Akhmedova in her efforts to enforce her rights as a UK judgment creditor.

On March 8, 2017 (while the Vessel and Farkhad were located within the United States, specifically, Florida), in disregard of the Initial Money Judgment (under which Qubo 2 was liable on the judgment debt together with Farkhad), and the English Freezing Order, Qubo 2 fraudulently transferred the Vessel to Straight Establishment.  Power Decl., Ex 4.  Straight Establishment is a Liechtenstein entity, which is operated from the same address as Qubo 2.  Straight Establishment

is the current registered owner of the LUNA,[2] and has registered as a foreign maritime entity as required under RMI law.   According to documents obtained from the RMI Registrar of Corporations, the fraudulent transfer of the Vessel's title to Straight Establishment in violation of the Freezing Order was effected on behalf of Farkhad by individuals who also happen to serve as key officers and directors at Y. CO., the Vessel's current manager. *See id.*

### B.      The Straight Money Judgment

On March 21, 2018, the English Court issued the Straight Money Judgment, which extended the Initial Money Judgment to include Straight Establishment and Avenger Assets. The English Court found that Straight Establishment was an alter ego of Farkhad and served as his nominee. Power Decl. ¶ 14. The English Court also found that assets held and previously held in Straight Establishment's name, as well as assets held and previously held in Avenger Asset's name, beneficially belonged to Farkhad, including the Vessel which had been fraudulently transferred by Farkhad several times during the English proceedings. *Id.*

Additionally, on March 21, 2018, the English Court declared "with immediate effect that Applicant is the legal and beneficial owner of the Vessel," and ordered Farkhad and Straight Establishment to transfer title to Ms. Akhmedova within seven days. *See* Power Decl. ¶ 15. The English Court ordered that if the title transfer was not effected within seven days, Straight Establishment would be liable to Ms. Akhmedova for a liquidated cash sum of $487,278,000. *See id.,* Ex. 5 at ¶ 82(2). The English Court also extended the Freezing Order to apply to Straight

---

[2] As of August 8, 2018 Straight Establishment and its agents have been permanently enjoined from further transferring ownership, control or possession of the LUNA by the High Court of the Marshall Islands though Farkhad has established that he has violated such injunction by arranging to illegally tow the LUNA from Dubai thereby further frustrating Applicant's efforts to gain possession and control over the LUNA which was awarded to her by the English court.  Straight is similarly enjoined from encumbering the Vessel with any liens.

Establishment and Avenger Assets, and specifically applied to prohibit the "removal, disposal, charging and/or diminution in value" of the Vessel. *See id.*, Ex. 5 at ¶ 86.

On April 19, 2018 the English Court issued a press release followed by a Judgment issued on the same date. Power Decl., Ex. 5. The April 19 opinion and order issued by Justice Haddon-Cave referred to as the "Approved Judgement," in addition to granting further relief to Applicant as a result of Straight's failure to transfer title to Ms. Akhmedova as ordered, recites the basis for the Court's March 21, 2018 Straight Money Judgment. *See id.* Justice Haddon-Cave sets forth in detail his reasoning for finding Straight and Avenger to be alter egos of Farkhad including his assessment of the evidence presented and includes a detailed organogram showing Farkhad's known affiliates and the transfers of estate property made between them. *See id.*, Ex. 5 at 21.

## II.    The Dubai Proceedings

Following the issuance of the English Judgments as well as the Freezing Order directed at Farkhad with respect to the Vessel, on February 7, 2018 Applicant filed an application in the Dubai International Financial Centre Courts (hereinafter the "DIFC Court") against Farkhad and Straight Establishment (the owning entity of the Vessel), for recognition of the English Judgments, and for an interim freezing order to prevent Straight Establishment from disposing of or transferring ownership of the Vessel. Power Decl., ¶ 17. At the time of the DIFC application, the Vessel was in Port Rashid, Dubai. On February 8, 2018 the Dubai Court issued an interim freezing injunction on an *ex parte* basis, and ordered that the injunction order be served on Farkhad by registered mail and email, and on Straight by registered mail and email via their registered agent in Liechtenstein. On the basis of the DIFC Freezing Injunction, the Dubai onshore court (the "Dubai Court") later granted an interim arrest of the Vessel pending determination as to the parties' claims in that Court.

*Id.* The Vessel remains under arrest in Dubai, but Farkhad and Straight Establishment have filed various challenges to the Dubai action. *Id.*

**III.      The Marshall Islands Proceeding**

Applicant filed an action in the High Court of the RMI on July 10, 2018 (Case No. 2018-169) seeking recognition and enforcement of the two English Judgments entered in the English Court in favor of Applicant, and against the alter egos of Farkhad Akhmedov. Power Decl. ¶ 19. Specifically, the registered owner of the Vessel, Straight Establishment is a foreign maritime entity registered in the RMI, and the RMI Court has jurisdiction over the Maritime Administrator who maintains the RMI vessel registry, to re-register the Vessel in Applicant's name upon entry of judgment in her favor and at the time sought emergency relief in the form of an injunction against the further transfer of ownership, title or possession of the LUNA and sought the appointment of a receiver pending recognition. *Id.*

In connection with the Petition, Applicant requested the issuance of a temporary restraining order and preliminary injunction preventing the transfer of ownership of the Vessel by Straight Establishment during the pendency of the RMI action. On July 13, 2018, the RMI Court entered a temporary restraining order enjoining Straight Establishment from "disposing of, selling, transferring, encumbering, secreting or further exercising dominion or control over the Vessel to the exclusion and prejudice of Petitioner, wherever the Vessel is located." Power Decl. ¶ 20.

On August 8, 2018, following substantial briefing between the parties, the court entered an order finding that grounds existed for the issuance of a preliminary injunction against Straight Establishment and its officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with them from "disposing of, selling, transferring, encumbering, removing, paying over, conveying or otherwise interfering with the vessel M/Y

Luna… a vessel registered in the Marshall Islands, wherever located, during the pendency of this action" (the "Preliminary Injunction Order"). *Id.* ¶ 22.

Applicant had also requested the appointment of a temporary receiver over the Vessel to ensure that the Vessel was not destroyed, devalued or otherwise diminished by Farkhad or Straight Establishment pending adjudication of the RMI and Dubai actions. On August 8, 2018, the RMI Court declined to appoint a temporary receiver based on his finding that at that time, an emergency did not yet exist, as there was no indication at that time that the Vessel would leave Dubai. Power Decl. ¶ 23. The Court further stated that "[i]f, however, the Dubai arrest is vacated or other circumstances support the finding of an emergency, the Court will reconsider Ms. Akhmedova's request for a temporary receiver." *Id.* On January 4, 2018, Applicant filed a renewed motion for the appointment of a receiver on the basis of emergency developments in Dubai, namely, that Straight Establishment was seeking vacatur of the arrest of the Vessel on an *ex parte* basis, without notice to Applicant or to the RMI Court, while contracting with a local tug to remove the Vessel from the jurisdiction prior to Applicant being able to file an appeal in Dubai, or to obtain emergency relief from the RMI Court. *Id.* Applicant's renewed motion is still pending in the RMI.

On November 2, 2018, the RMI Court entered an order denying Straight Establishment and Qubo 2's motion to dismiss, holding that it has personal jurisdiction over Qubo 2 and Straight Establishment as foreign maritime entities registered in the Republic pursuant to 52 MIRC Part I § 125(2)(d) and consistent with due process. Power Decl. ¶ 24.

On November 26, 2018 Applicant moved for summary judgment recognizing and enforcing the English money judgments against respondents Qubo 2 and Straight Establishment. Power Decl. ¶ 25. On January 3, 2019, in connection with Applicant's motion for summary judgment, the RMI Court issued the Supplemental Briefing Order which authorized discovery by

Applicant on several issues, including whether there is a factual basis to support the English Court's finding of alter-ego and exercise of personal jurisdiction over Qubo 2 and Straight, such that the English Judgments should be recognized in the RMI. *Id.*

## IV.    The Liechtenstein Proceeding

On May 12, 2017, a criminal proceeding was filed in Liechtenstein. Power Decl. ¶ 26.  The Liechtenstein proceeding, which is ongoing, can be summarized as follows.  A criminal complaint was submitted to the Federal Prosecutor in Liechtenstein against Mr. Farkhad Akhmedova, Cotor and unknown offenders.  Applicant alleges that Farkhad used Lichtenstein entities Qubo 1 and Qubo 2 to hide assets from the English courts.  In light of the asset transfers which took place close to and in anticipation of the issuance of courts decisions in England, the complaint is based on the argument of "obstruction of legal execution" in accordance with Section 162 Liechtenstein Criminal Code. *Id.*

Information obtained pursuant to this 1782 discovery would be submitted as appropriate to the Prosecutor who will consider whether such information about the timing, parties and substance of transactions warrants criminal prosecution under the laws of Liechtenstein.  The discovery regarding any transfers prior to, during and after the Financial Remedy Hearing in England concerning the LUNA, including evidence of conveyances between Liechtenstein entities Qubo 2 and Straight after the freezing injunction was issued could be offered to support a criminal action. The nature of the criminal action initiated in Lichtenstein allows Applicant to submit evidence obtained in support of violations alleged to have occurred by Farkhad Akmedov and others.

**ARGUMENT**

## I.  28 U.S.C. § 1782 PROVIDES FOR DISCOVERY IN AID OF PENDING FOREIGN ACTIONS

The basis for this *ex parte* Application is 28 U.S.C. § 1782 ("Section 1782"). "It is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*." *Gushlak v. Gushlak*, 486 Fed. Appx. 215, 217 (2d Cir. 2012).

Section 1782 authorizes a United States District Court, upon the application of an interested person, to order a person residing in the district to give testimony or produce documents for use in a foreign proceeding:

> The District Court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusations. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a). Whether to grant this Application for discovery pursuant to Section 1782 is within this Court's discretion. *Kiobel by Samkalden v. Cravath*, Swaine & Moore LLP, 895 F.3d 238, 244 (2d Cir. 2018), *cert. denied sub nom. Kiobel ex rel. Samkalden v. Cravath, Swaine & Moore LLP*, No. 18-706, 2019 WL 113206 (U.S. Jan. 7, 2019); *In re Clerici*, 481 F.3d at 1331 ("Once a district court is assured that it has jurisdiction over the petition, it "may grant discovery under § 1782 in its discretion. We review the decision to grant a Section 1782 petition for abuse of discretion.") (internal citations omitted); *In re Application of Aldunate*, 3 F.3d 54, 62 (2d Cir. 1993), *cert. denied*, 510 U.S. 965 (1993).

## II.   APPLICANT SATISFIES THE STATUTORY REQUIREMENTS OF SECTION 1782

The United States Supreme Court has interpreted Section 1782 as having a broad application. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 259 (2004).  Indeed, in *Intel*, the Supreme Court specifically rejected the multiple limitations that Intel Corp. attempted to inject into the interpretation of the statute. *Intel*, 542 U.S. at 256 ("The Court . . . rejects the categorical limitations Intel would place on the statute's reach").  Instead, the Supreme Court adopted a liberal interpretation of the Statute and provided guidelines for the future application of the statute by federal district courts. *Id.*

*In re Application of Aldunate*, 3 F.3d 54, 62 (2d Cir. 1993), *cert. denied*, 510 U.S. 965 (1993) sets forth the statutory requirements to achieve discovery under 28 U.S.C. 1782, and, Ms. Akhmedova satisfies each one of them.  The requirements are:

> (1) the person from whom discovery is sought must reside in or be found in the district of the district court to which the application is made, (2) the discovery must be "for use in a proceeding in a foreign or international tribunal," and (3) the application must be made "by a foreign or international tribunal" or by "any interested person.

3 F.3d at 58 (quoting 28 U.S.C. §1782).  Ms. Akhmedova is an interested person to the pending RMI Litigations; the New York Banks that have possession, custody and/or control of the discovery sought reside in or are found within this district; and the evidence is sought for use in the pending Foreign Actions.

### A.     Applicant is an Interested Person in the Pending Foreign Actions.

Ms. Akmedova is a party or petitioner in each of the Foreign Actions, as well as the movant in the summary judgment motion pending in the RMI Litigation.  Accordingly, she is an "interested person" as that term is used in Section 1782. *See Lancaster Factoring Co. v. Mangone*, 90 F.3d 38, 42 (2d Cir. 1996) (citing  Senate Report at 8, 1964 U.S.C.C.A.N. at 3789 and noting "The

legislative history to § 1782 makes plain that "interested person" includes "a party to the foreign ... litigation."); *In re Application of Malev Hungarian Airlines*, 964 F.2d 97, 101 (2d Cir. 1992), *cert. denied*, 506 U.S. 861 (1992). In *Malev*, for example, the Second Circuit reversed the lower court's denial of the Applicant's 1782 application where the applicant was a party to a foreign proceeding in Hungary. Specifically, the Second Circuit disagreed with the lower court's reasoning that the request should not be granted absent direction from the Hungarian Court and held that, as a party to the Hungarian litigation, the applicant was an "interested person." *Id.* at 100-01.

Furthermore, the Supreme Court has recognized the definition of an interested party to be any person who "possess[es] a <u>reasonable interest</u> in obtaining [judicial] assistance." *Intel*, 542 U.S. at 256 (emphasis supplied). This definition encompasses more than simply the parties to the foreign litigation. *See Lancaster*, 90 F.3d at 42 (holding that agent of a party to a foreign litigation qualified as an interested person for the purposes of Section 1782). Accordingly, as a party in each of the Foreign Actions, Ms. Akhmedova falls comfortably within the definition of an "interested person."

**B.      The persons or entities with possession, custody and/or control of the discovery sought reside in or are found within this District.**

The New York Banks "reside" or are "found" in this Judicial District. For purposes of Section 1782, a company is found where it is incorporated, headquartered or where it is engaged in "systematic and continuous activities." *In re Godfrey*, 526 F. Supp. 2d 417, 422 (S.D.N.Y. 2007) (citation omitted). Ms. Akhmedova seeks the production of documents by the New York Banks located at, or accessible from their New York offices. Ms. Akhmedova anticipates serving the New York Banks with subpoena *duces tecum* in this District upon the issuance of an order by the Court authorizing the discovery assistance requested.

**C.    Discovery is sought for use in the pending Foreign Actions, which are being held before one or more foreign tribunal.**

Ms. Akhmedova seeks discovery "for use in a proceeding in a foreign or international tribunal". *Aldunate*, 3 F.3d at 58 (quoting 28 U.S.C. §1782).  This element is construed liberally and turns on two factors: (1) whether there actually is a foreign proceeding; and (2) whether the foreign proceeding is adjudicative in nature. *Jiangsu Steamship Co. v. Success Superior Ltd.*, No. 14-9997, 2015 WL 3439220, at *3 (S.D.N.Y. Feb. 5, 2015).

The only factor at issue – whether the proceedings are "adjudicative" in nature – is easily satisfied.[3]  The discovery sought is directly relevant to Foreign Actions and has been ordered by the RMI Court to inform a legal issue pending before it – the alter-ego status of Akhmedov's corporate entities.  Once obtained, Ms. Akhmedova will be able to put said discovery before the RMI Court as evidence to support its adjudication of the Petition.

This Court has previously authorized discovery pursuant to Section 1782 to inform questions of alter ego.  *See In Re the Application of Gac Marine S.A. Branch Office in Turkmenistan*, No. 1:15-MC-00078 (S.D.N.Y. March 31, 2015).  There, applicant sought discovery from numerous banks located in the United States to determine, *inter alia*, whether several corporate-entities related to the a judgment debtor were "substantially connected" to or alter egos of it.  *Id.*, Dkt. 2.  The Court agreed, and authorized the Applicant to issue subpoenas on all of the banks requested to obtain accounts, loans, lines of credit or other funding arrangements, and wire transfer data in connection with the alleged alter-egos.  *Id.* Dkt. 5.  Here, Applicant is essentially requesting the same.

---

[3] The first factor is not at issue because all of the Foreign Actions are pending.  Even if it was, actions need not be pending, but only "within reasonable contemplation." *Intel*, 542 U.S. at 259.  To satisfy the "within reasonable contemplation" requirement, the applicant must provide "some objective indicium that the action is being contemplated." *Certain Funds*, 798 F.3d at 123.  Using this standard Courts have granted discovery in connection with numerous proceedings yet to be initiated.

Ms. Akhmedova's application is distinguishable from those in other Section 1782 actions where an applicant sought discovery for the sole purpose of judgment enforcement, e.g., *Jiangsu Steamship Co. v. Success Superior Ltd.*, No. 14-9997, 2015 WL 3439220, at *3 (S.D.N.Y. Feb. 5, 2015). In *Jiangsu*, the applicant sought discovery from several New York banks in order to locate the assets of two entities which it planned to pursue in arbitration. *Id.* at *2. The Court rejected the application, reasoning that the discovery would not assist the foreign court in addressing the merits of a dispute. *Id.* at 5. In contrast to *Jiangsu Steamship Co.*, Applicant seeks discovery to inform the RMI court's analysis concerning alter ego as the basis for the English Court's jurisdiction – a factor which is necessary for enforcement of a foreign money judgment. The RMI Court has ordered supplemental briefing and specifically authorized the related discovery, therefore the discovery is directly relevant to adjudication of Applicant's RMI action for recognition.

Applicant may also use the discovery to amend the English Judgments previously rendered by the English Court. As shown by the English Court's issuance of the Straight Money Judgment, the English Court is willing to <u>expand</u> the applicability of its ruling to additional entities where such entities are shown to be Akhmedov's alter ego and if necessary, freeze accounts that are shown to fraudulently transfer assets. These determinations are also "adjudicatory" because English Courts will need to review and evaluate evidence of alter ego presented by Applicant and determine if such evidence merits the expansion of its previous judgments.

Importantly, the discovery sought does not need to be necessary for the applicant to <u>prevail</u> in the foreign proceeding. *Mees v. Buiter*, 793 F.3d 291, 299 (2d Cir. 2015)  The Second Circuit has analyzed the "for use" requirement by focusing on the "practical ability of an applicant to place a beneficial document—or the information it contains—before a foreign tribunal." *Accent Delight*

*Int'l Ltd.*, 869 F.3d at 131 (emphasis in original). Section 1782 can be used to "seek discovery of any materials that can be made use of in the foreign proceeding to increase [the] chances of success" and that can be used "at some stage of the foreign proceeding." *Mees*, 793 F.3d at 299. Materials can be "for use" not only in pleading the operative claims in the foreign proceedings, but in proving them. *Id.* at 299.

## C.    MS. AKHMEDOVA SATISFIES *INTEL*'S DISCRETIONARY FACTORS

"Once the statutory requirements are met, a district court is free to grant discovery at its discretion." *Maubeni Am. Corp. v. LBA Y.K.*, 335 F. App'x 95, 96 (2d Cir. 2009) (quoting *Schmitz v. Bernstein Liebhard & Lifshitz*, LLP, 376 F.3d 79, 83-84 (2d Cir. 2004)). The court's discretion, however, is not boundless. It should exercise its discretion "in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Schmitz v. Bernstein Liebhard & Lifshitz*, LLP, 376 F.3d 79, 84 (2d Cir. 2004). As the Second Circuit observed, Section 1782 is intended to encourage discovery assistance to foreign litigants:

> We read section 1782's investment of broad discretion in the district courts as an invitation for district judges to fashion creative means of implementing the statute's double goal: promoting efficiency in international litigation and persuading other nations, by example, to do the same. Absent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance.

*See Euromepa S.A.*, 51 F.3d 1095, 1102 (2d Cir. 1995).

In *Intel*, the Supreme Court identified four relevant discretionary factors that bear consideration in ruling on a Section 1782 request: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character

of the proceedings underway abroad, and the receptivity of the foreign government, court, or agency to federal-court judicial assistance; (3) whether the Section 1782(a) request conceals an attempt to circumvent foreign proof-gathering limits or other policies of a foreign country or the United States; (4) whether the discovery requests are unduly intrusive or burdensome. *Intel*, 542 U.S. at 264-65; *In re Clerici*, 481 F.3d at 1334.

Each of the discretionary *Intel* factors favor granting this Application. First, the New York Banks will not be parties to or participants in the Foreign Actions, and the courts of the Foreign Actions are unlikely to have jurisdiction to obtain the requested discovery. *See, e.g., In re O'Keeffe*, 650 F. App'x 83, 85 (2d Cir. 2016) (holding that discovery target's status as a non-party to foreign litigation weighs in favor of granting discovery); *Purolite Corp. v. Hitachi Am.*, Ltd., No. 17 Misc 67 (PAE), 2017 WL 1906905, at *3 (S.D.N.Y. May 9, 2017) (holding applicant satisfies first *Intel* factor in part because foreign court would not have jurisdiction to compel United States-based discovery from a non-party). Thus, the first factor weighs in favor of discovery.

Second, there is no evidence that the any of the foreign judicial systems would be unreceptive to the discovery sought here. "[O]nly upon authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782, should a district court refrain from granting the assistance offered by the act." *Esses v. Hanania*, 101 F.3d 873, 876 (2d Cir. 1996) (emphasis added). Absent such authoritative proof, "courts have been instructed to tread lightly and heed only clear statements by foreign tribunals." *In re XPO Logistics, Inc.*, No. 15-mc-205, 2017 WL 2226593, at *6 (S.D.N.Y. May 22, 2017) (citation omitted). Thus, the second factor also weighs in favor of discovery.

Third, there is no suggestion that granting the assistance requested by Applicant will offend the policies of the foreign judicial systems or constitute a circumvention of their discovery

protocols.  To the contrary, at least in regards to the RMI, the RMI Court has ordered supplemental discovery.  Moreover, this factor does not impose upon a Section 1782 applicant a "foreign-discoverability requirement." *See Mees*, 793 F.3d at 303. Nor does this factor require an applicant to demonstrate it attempted to obtain the discovery from another source, such as the foreign tribunal, prior to filing a 28 U.S.C. § 1782 application. *Id.* (rejecting quasi-exhaustion requirement). Accordingly, the third factor similarly weighs in favor of discovery.

Finally, the requests are neither unduly intrusive nor burdensome. In assessing this factor, the court should "assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *See id.* at 302. The Second Circuit "has generally encouraged district courts to take a permissive approach and 'reconcile whatever misgivings [they] may have about the impact of [their] participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief.'" *See Euromepa S.A.*, 51 F.3d at 1101.  This factor requires only that "the subject matter of the request [ ] [be] reasonably tailored to speak to the claims and defenses raised in the [foreign] proceedings at issue." *Consellior Sas*, 2017 WL 449770, at *2.

The New York Banks maintain these records and can easily search for and produce them without burden or significant expense. *See Catalyst Managerial Servs.*, 680 F. App'x 37, 39 (2d Cir. 2017) (affirming grant of wire transfer discovery from certain banks located in New York); *In re Application of Hornbeam Corp.*, No. 14-mc-424 (Part 1), 2017 WL 2241522, at *2 (S.D.N.Y. May 22, 2017) (authorizing discovery of wire transfers from certain banks located in New York). The records requested by Applicant are limited to relevant discovery targets – the known alter ego entities of Farkhad Akhmedov – each of which are named as judgment debtors and are subject to the freezing orders of the English Court, and which are directly linked to the issues being litigated

in the RMI Action. Specifically, wire transfers to, from, or referencing these entities and/or the Vessel are likely to include transfers linking the chains of Akhmedov's indirect ownership, revealing the source of funds used for Akhmedov's maintenance of the Vessel and other fraudulently transferred and concealed assets. Thus, each of the *Intel* factors weigh in favor of granting this request.

**D.     THIS COURT MAY GRANT DISCOVERY RELIEF *EX PARTE* AND WITHOUT NOTICE TO FARKHAD, STRAIGHT ESTABLISHMENT OR QUBO 2**

It is well-settled law that Section 1782 applications may, and in fact commonly are, granted *ex parte*. *See, e.g., Gushlack v. Gushlack*, 486 Fed. Appx. 215, 217 (2d Cir. 2012) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*."); *In re Letters Rogatory From Tokyo Dist.*, 539 F.2d 1216, 1219 (9th Cir. 1976) ("We do not find any of the other objections raised by the witnesses to be persuasive. Letters Rogatory [issued under § 1782] are customarily received and appropriate action taken with respect thereto *ex parte*."); *In re Ex Parte Application of Societe D'Etude De Realisation*, No. 13-mc-0266, 2013 WL 6164435, at *2 (E.D. Pa. Nov. 22, 2013) ("[A] survey of Intel's citing references reveals that the use of *ex parte* applications is widespread and, in many cases, unremarked upon (and thus approved of *sub silento*).") (collecting cases).

Section 1782 provides that "*[t]o the extent that the order does not prescribe otherwise*, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure." 28 U.S.C. § 1782 (emphasis added). Therefore, *unless the district court's authorizing order provides otherwise*, a party engaged in foreign litigation who serves a § 1782 subpoena *duces tecum* to obtain documents for use in the foreign litigation must ordinarily first serve notice on all parties to the foreign proceedings pursuant to Fed. R. Civ. P. 45.

Under the express contemplation of the discovery statute, this Court is authorized to order an exception to the traditional rule providing for notice to the parties to the Foreign Actions.  Given Farkhad and his alter egos' documented history of thwarting Court orders and judgments, a notice exception is appropriate and warranted here to prevent their intervention with the third-party discovery requested here.  Applicant therefore respectfully requests that this Court delay notice until such time as the New York Banks have complied with the subpoenas (with a response time requested herein of fourteen days).

**E.      REQUEST FOR EXPEDITED RULING**

An expedited ruling from this Court on this Petition is being sought.  The reason for the request for an expedited ruling is to enable Applicant to comply with a discovery deadline of January 31, 2019 and briefing schedule of February 13, 2019, set forth in an Supplemental Briefing Order, entered by RMI Court.  Power Decl. Ex. 1.  Applicant therefore seeks an order requiring the New York Banks to respond to subpoenas within fourteen (14) days of service.  As such, Applicant respectfully requests a ruling by this Court on this Application on or before January 15, 2019.

**CONCLUSION**

Based on the foregoing, this Court should exercise its discretion to grant foreign discovery assistance.  Under the circumstances, evidence that will be relevant to Ms. Akhmedova's entitlement to relief in the Foreign Actions is not available in the jurisdictions where her actions are pending but is located in the United States in this  District.  As such, Ms. Akhmedova seeks discovery pursuant to 28 U.S.C. § 1782 to obtain discovery specified in the Application and as set forth above.  Consistent with precedent cited above, the facts in the present matter clearly meet the requirements of 28 U.S.C. § 1782, and this 1782 Application for discovery should be granted.

21

HOLLAND & KNIGHT LLP

By: _____
James H. Power
Marie Larsen
Madelaine J. Harrington
31 West 52nd Street
New York, NY 10019
Phone: (212) 513-3200
Fax: (212) 385-9010
james.power@hklaw.com
marie.larsen@hklaw.com
madelaine.harrington@hklaw.com

*Attorneys for Tatiana Akhmedova*